NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JOINT WELFARE FUND, LOCAL UNION NO. 164, I.B.E.W., and TRUSTEES OF JOINT WELFARE FUND, LOCAL UNION NO. 164, I.B.E.W., | : : : : : : | **Hon. Dennis M. Cavanaugh** |
| | : | **OPINION** |
| Plaintiffs, | : : | Civil Action No. 09-CV-873 (DMC-JAD) |
| v. | : : : | |
| MICHAEL C. LONG, III, and KAREN NAGEL, | : : : | |
| Defendants. | : | |

**DENNIS M. CAVANAUGH, U.S.D.J.**:

This matter comes before the Court upon motion by Plaintiffs Joint Welfare Fund, Local Union No. 164, I.B.E.W. (hereinafter, "Local 164") and Trustees of Joint Welfare Fund (collectively, "Plaintiffs") for summary judgment pursuant Federal Rule of Civil Procedure 56 against Defendants Michael C. Long, III ("Long") and Karen Nagel ("Nagel") (collectively, "Defendants").  Pursuant to FED. R. CIV. P. 78, no oral argument was heard. For the reasons stated below, Plaintiffs' motion for summary judgment is **granted**.

I.      **BACKGROUND**[1]

The Fund is a trust fund providing medical, surgical, and hospital benefits and benefits in the

---

[1] The facts set forth in this Opinion are taken from the Parties' statements in their respective briefs.

event of sickness, accident, disability, and death, to participants in the Fund and their eligible dependents. (Pl.'s Br. in Supp. Mot. Summ. J. 2, July 7, 2011, ECF No. 32.)  Starting in 1999, Long was eligible for benefits from the Fund as a member of Local 164. Id. at 3.  During that time, as the spouse of Long, Nagel was also eligible for benefits.  (Fund Policy 6, Feb. 22, 2011, ECF No. 32-4.)

On or about May 5, 2000, Long and Nagel divorced. Id. at 2.  Accordingly, upon divorce Nagel ceased to be eligible for benefits from the Fund. Id.   Plaintiffs maintain that they became aware of the divorce on December 9, 2008 when Long submitted the withdrawal form and the divorce decree. Id. at 4.  Before Plaintiffs' discovery of the divorce, from May 5, 2000 to July 14, 2007, Nagel obtained benefits from the Fund, in the form of payment for medical treatment and prescription drugs, totaling $18,934.77 Id.; see also, Pl.'s Compl. ¶ 16, Jan. 25, 2009, ECF No. 1.

On February 25, 2009, Plaintiffs filed a Complaint demanding judgment against Long and Nagel for $18,934.77, together with interest, attorney's fees and costs associated with bringing the action, and any other legal or equitable relief as the Court may deem appropriate. Id. at 4-6.  On December 31, 2009, Defendants filed a Suggestion of Bankruptcy in this Court showing that discharge was granted as to debtors "Jeffrey Nagel" and "Karen Nagel" under chapter 7 of the Bankruptcy Code.[2]  The Honorable Novalyn L. Winfield of the United States Bankruptcy Court for the District of New Jersey, Newark Vicinage, granted Discharge on August 29, 2008 (hereinafter, the "Discharge").  In their filings, the Nagel's did not list the Fund as a creditor.

On February 22, 2011, the Defendants were deposed.  On July 7, 2011, Plaintiffs filed a motion for Summary Judgment in this Court.  Defendants did not respond to Plaintiffs' motion.

---

[2]In 2005, Karen married Jeffrey Nagel and the couple filed jointly in bankruptcy on or about May 27, 2008.

**II.      STANDARD OF REVIEW**

It is well established that this Court is to review the facts in the light most favorable to the

nonmoving party.   Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 501 (3d Cir.1996); see also,

Dowling v. Citizens Bank, 295 Fed.Appx. 499 (3d Cir. 2008).  Summary judgment is appropriate where

there are no genuine material issues of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 330

(2008).  A factual dispute is material if, under the substantive law, it would affect the outcome of the

suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The non-moving party "may not rest

upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient

evidence to support a jury verdict in his favor.  Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Third Circuit holds that "in considering a motion for summary judgment, a district court

may not make credibility determinations or engage in any weighing of the evidence; instead, the non-

moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor."

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Lack of opposition to a motion for summary judgment is not a sufficient basis, on its own, for

granting judgment in favor of the moving party.  Grant of a summary judgment motion must also be

"appropriate."  Anchorage Assoc. v. V.I. Bd. of Tax L. Rev., 922 F.2d 168, 175 (3d Cir. 1990) (citation

omitted).  Even though Rule 56(e) requires a non-moving party to "set forth specific facts showing that

there is a genuine issue for trial," it is "well-settled . . . that this does not mean that a moving party is

automatically entitled to summary judgment if the opposing party does not respond."  Id.  Lack of

opposition does not affect the standard guiding a summary judgment motion and the Court must

determine whether judgment is appropriate, as a matter of law, as a result of the finding of no genuine

issues of material fact to be tried.

### III.     DISCUSSION

At issue in this case is whether Karen Nagel improperly collected $18,934.77 from the Fund after divorce from her former spouse.  Defendant Long received a Welfare Fund Booklet providing a description of plan benefits (hereinafter, the "Policy" or "Fund Policy").  (Aff. of Carlson Ex. A Dep. of Long  13:19-25, Feb. 22, 2011, ECF No. 32-4.)  A cover letter supplementing the Policy itself explicitly notified all "eligible electricians" covered as employees that, "It is your responsibility to read the booklet and be aware of its contents."  (Fund Policy 1.)  In fact, the cover letter further explained that the Fund Office was available to offer assistance with any questions regarding the Policy.  Id.

The Fund Policy, received by Defendant Long, explicitly states who is eligible for coverage. Once employment is covered under the Policy, dependent eligibility arises in the employee.  Eligible dependents include a Fund employee's "lawful spouse."  (Fund Policy 6, ECF No. 32-4.)  Dependent eligibility is premised upon the dependent's relationship to the covered employee by either blood, adoption or marriage.  If eligibility of a dependent is the result of a marital relationship, coverage will terminate upon the end of the marriage.

The Policy enumerates this concept as a "condition of eligibility," wherein a dependent is required to verify dependent status by supplying any information reasonable to a determination of benefit rights, including a marriage certificate.  Id. at 6.  Absent any evidence or authority to the contrary, this Court infers that the concept shall also be read in the alternative to require notice of a substantial change wherein any of the requirements of dependent eligibility cease to be provable.

Medical payments for medical treatment benefitting an ineligible dependant constitutes unjust enrichment.  Other Circuits have found generally that health insurance companies are entitled to an equitable remedy where benefits are paid to an ineligible dependant.  See e.g., Hartford Acc. & Indem. Co. v. Chicago Housing Authority, 12 F.3d 92 (7th Cir. 1993); see also Glover v. Metropolitan Life Ins.

Co., 664 F.2d 1101, 1103 (8th Cir. 1981), aff'd, 698 F.2d 947 (8th Cir. 1983).  The Third Circuit has

explicitly carved out a remedy for insurers to recover ERISA fund benefits mistakenly paid.[3]  See Luby

v. Teamsters Health, Welfare, and Pension Trust funds, 944 F.2d 1176, 1185-7 (3d Cir. 1991) (holding

ERISA fund properly awarded restitution for mistaken payments regardless of whether fund's

negligence caused erroneous payment).

It is clear from the Luby opinion that the Third Circuit spent ample time and energy both

analyzing and discussing the issue of whether restitution was an appropriate remedy in cases similar to

the one before this Court.  First, the Circuit noted that Congress intended the federal courts to fashion

a federal common law under the ERISA statute.  Id. at 1186.  To that end, the Circuit Court found that

permitting application of a federal common law doctrine of unjust enrichment would be proper, so long

as application comports with the terms of the plan itself.  Id.  The Court buttressed its conclusion by

citing a mainstay goal of the ERISA statute, to "safeguard the corpus of funds set aside under a Plan for

valid fund beneficiaries."  Id.

Defendant Nagel was no longer an eligible dependent of Defendant Long's once the marital

relationship ended.  Nonetheless, $18,934.77 was collected by Defendant Nagel under the Fund Policy

for medical treatment after the marital relationship had terminated.  This collection constitutes unjust

enrichment.  The Fund is entitled to reimbursement for those benefits improperly paid.

Also at issue is whether the joint filing of Karen Nagel with her current husband in bankruptcy

protects her from this judgment of debt owed.  Notice under Chapter 7 states as follows:

---

[3]An "'employee welfare benefit plan' mean[s] any plan, fund, or program . . . established
or maintained by an employer or by an employee organization, or by both . . . for the purpose of
providing for its participants or their beneficiaries, through the purchase of insurance or
otherwise . . . medical . . . benefits."  Definitions, 29 U.S.C.A. § 1102 (2008).  This Court hereby
finds the Fund to fall within this definition as an "ERISA fund."

Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for . . . certain debts which are not properly listed in your bankruptcy papers . . . Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged. (Aff. of Carlson Ex. B Dep. of Nagel, Feb. 22, 2011, ECF No. 32-8.)

Defendants certified receipt and affirmation of the Notices to Individual Consumer Debtor Under 11 U.S.C.A. § 342(b) of the Bankruptcy Code, including the aforementioned. Id. Additionally, during her deposition, Ms. Nagel acknowledged that though the discharge would have the effect of terminating her obligation to any debts listed in the schedules, no debt to "Local 164 Welfare Fund" was listed. (Aff. of Carlson Ex. B Dep. of Nagel 22:12-24, Feb. 22, 2011, ECF No. 32-8.)

Chapter 7, by design, protects debtors in financial difficulty who do not have the ability to pay their existing debts. The discharge applies to only those debts existing and presented at the bankruptcy proceeding. See generally, Effect of discharge, 11 U.S.C.A. § 524 (2010). Without more in terms of argument or explanation surrounding the suggestion of bankruptcy, this Court shall not find that Defendant Nagel is protected in bankruptcy from the impending judgment obligating reimbursement of benefits paid by the Fund.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **granted.** An appropriate Order follows this Opinion.

S/ Dennis M. Cavanaugh<br>Dennis M. Cavanaugh, U.S.D.J.

Date:         February __28__, 2012
Orig.:        Clerk's Office
cc:           All Counsel of Record
              File